Haight, J.
—This action was brought to perpetually restrain the defendant from operating its railroad upon the lands of the plaintiff and for damages. The defendant is a railroad corporation, organized under chapter 197 of the Laws of 1866. In the year 1885 the defendant constructed its road in the highway running from Seneca Falls to Waterloo, and has ever since been engaged in running cars propelled by steam engines for the conveyance of passengers. The railroad so constructed, together with the highway, runs through the plaintiff’s farm, which he occupies under a deed, which is sufficient in form to vest in the plaintiff the fee of the roadbed. It is claimed, however, that the fee of the highway in question is in the state, and that the act under which the defendant was incorporated gives it the right to occupy the highway for the purposes of its railroad. Numerous exceptions were taken to the findings of the trial court which we are not called upon to consider, for the reason that the appeal book does not contain a single deed, map or other exhibit received in evidence upon the trial, and without which the court cannot well review the facts. But a single question is presented which we are called upon to consider.
It appears that in the year 1791 the state issued letters patent to an Indian colonel by the name of Louis Ayataglironta, conveying certain lands, including those in question, but reserving five acres out of every hundred acres of said lands for highways; that the colonel conveyed to Cornelius A. D. Van Slyke, April 21, 1792, and that Van Slyke conveyed to John Atkinson, De cember 22, 1792, who conveyed to Samuel Perry and John Van Tuyl, June 26, 1811, in each of which deeds it is stipulated a like reservation appears. It is contended on the part of the appellant that at the time of the original grant of letters patent to the Indian colonel, the road in question was already in existence, and thereby formed a location of the five acres reserved in each hundred acres conveyed. The trial court, however, has refused to so find, and instead thereof has found that no highways were laid out or located there, or were in existence upon the lands at the time of the grant. The evidence upon this branch of the case is exceedingly meagre. From the testimony of the witness Lun it would appear that there was a road or highway called the state road, which was about two miles and a half north of Seneca Falls; that he knew of this road as early as 1809; that the road in question was the most *1015 traveled, and was the one that was usually passed over since the bridge was made at Bridgeport across Cayuga Lake.
By referring to chapter 60 of the Laws of 1797, we find under a preamble stating that. “ Whereas, it is highly necessary that direct communication be opened and improved between the western, northern and southern parts of the state, it be enacted,” etc., that lotteries be established, the proceeds of which are to be used for the “ opening and improving of the road commonly called the Great Genesee road, in all of its extent from old Fort Schuyler in the county of Herkimer to Geneva in the county of Ontario, except in that part thereof which deviates from the place where the intended bridge over the Cayuga lake is to be erected, instead whereof the road shall be opened from the said place to intercept the said Great Genesee road on the east and west side of said lake at such points and in such directions as the commissioner or commissioners to whose superintendence the opening and improving of such great road shall be committed, shall, in his or their discretion, deem most •beneficial to the community at large.”
And again, by chapter 78 of the Laws of 1800, it was provided, among other things, that certain persons, naming them, together with such persons as they shall associate for the purpose, be made a corporation by the name of the president and directors of the Seneca Road Company, and authorized to make & good and sufficient road from the house of John House, in the village of Utica, to the village of Cayuga, and from thence to the court house in Canadarque, in the county of Ontario, observing as nearly the line of the present state road as the nature of the ground will allow, etc. This corporation, by Its president, directors or agents, was empowered to deviate from the Genesee road wherever it was necessary, and to lay out and survey such routes or ■tracts as shall be most eligible for a good and sufficient road between the places aforesaid, and to contract with the owner or owners for the purchase of so much of the lands as may be necessary for making such road, and, in case of disagreement between the parties respecting damages, that the same shall be appraised in accordance with provisions therein contained. This act was amended by chapter 37 of the Laws of 1801. Under these acts the company was authorized to maintain the road with toll-gates thereon for the purpose of raising revenue to sustain the same.
It appears from the provisions of the first act to which we call attention that there was at the time existing a state road which it was sought to open and improve. The evidence does not clearly establish the place where this road was located, only as it may inferentially appear from the testimony of the witness Lun, in which he states that the state road, so-called, was located ■two miles and a half n rth of the road in question. But it appears from the provisions of the act that a bridge over Cayuga lake was contemplated, and the commissioners were authorized to construct a road on either side from the bridge to intercept the Great Genesee road at the place deemed most beneficial to the community at large. The inference to be drawn from this act would be to the effect that at this time there was no state road laid out that passed to or from the contemplated bridge across Cayuga lake; and, inasmuch as the road in question forms an approach to such bridge, we consequently conclude that the trial court properly found that the highway in question was not in existence in 1791, the time of the grant. But in 1809 we find the Seneca Road Company operating its road as a turnpike and toll road, from which fact we conclude that the company must be deemed to have opened the road in pursuance of the acts of the legislature to which we have already referred. These acts provide for the appraisal of the lands that are taken, and the payment of damages where the eompany is unable to agree with the landowners therefor. So that there is nothing in the provisions of these acts from which we can determine that there was a subsequent location by the parties of the five acres reserved in every 100 from the original grant.
. We are, therefore, of the opinion that the judgment should be affirmed, with costs.
So ordered.
Barker, P. J., Bradley and Dwight, JJ., concur.